IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT RILEY,

                                      OPINION and ORDER

                Plaintiff,

                                     09-cv-308-bbc

      v.

TOM VILSACK, Department of Agriculture;
ABIGAIL KIMBELL, Chief Forest Service;
and THE U.S. DEPARTMENT OF AGRICULTURE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

For 50 years, Conley v. Gibson, 355 U.S. 41 (1957), provided the standard for determining the legal sufficiency of a complaint in federal court under Fed. R. Civ. P. 8. Any student of federal civil procedure is familiar with the famous passage from Conley, repeated in countless court decisions over the years: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The Court of Appeals for the Seventh Circuit took this directive seriously, reminding district courts in many opinions not to require plaintiffs to do more than provide minimal notice of their claims.

1

E.g., <u>Kolupa v. Roselle Park District</u>, 438 F.3d 713, 715 (7th Cir. 2006) ("Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Rule 9(b)."); <u>Doe v. Smith</u>, 429 F.3d 706, 708 (7th Cir. 2005); ("Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of."); <u>Higgs v. Carver</u>, 286 F.3d 437, 439 (7th Cir. 2002) ("The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.")

Then came <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in which the Supreme Court "retired" the standard from <u>Conley</u> with little fanfare, concluding in an antitrust case that "fair notice" is insufficient.  In addition to providing notice, the complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  The Court went further in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1953 (2009), holding that the "plausibility" standard applies to "all civil actions . . . antitrust and discrimination suits alike."   Not surprisingly, <u>Twombly</u> and <u>Iqbal</u> have reinvigorated motion practice under Fed. R. Civ. P. 12(b)(6) as lower courts attempt to apply the new standard in cases across the legal spectrum.  Robert Rothman, <u>*Twombly* and *Iqbal*: A License to Dismiss</u>, 35 Litigation 1 (Spring 2009).

In this case brought under federal employment discrimination laws, defendants Tom

2

Vilsack, Abigail Kimball and the U.S. Department of Agriculture have filed a motion to dismiss that relies heavily on Twombly and Iqbal. In particular, defendants argue that plaintiff's allegations of age discrimination, disability discrimination and retaliation are too "vague and conclusory" to satisfy Rule 8 as interpreted in those cases. (Initially, defendants included an alternative argument that plaintiff's complaint should be dismissed as untimely because he failed to file it within 90 days of receiving a final decision from the Equal Employment Opportunities Commission, 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a, but defendants abandoned that argument in their reply brief after plaintiff represented in his brief that he received notice of the EEOC decision less than 90 days before he filed his complaint in this court.)

I conclude that plaintiff has stated a claim upon which relief may be granted with respect to his age discrimination claim, but not with respect to his claims for disability discrimination and retaliation. After Twombly and Iqbal, conclusory allegations of discrimination are no longer sufficient to satisfy federal pleading requirements. Thus, plaintiff's bare assertions that defendants failed to accommodate his disability and engaged in a "campaign of retaliation" against him are insufficient to satisfy Rule 8.

On the other hand, plaintiff's allegations of age discrimination are more than conclusions. He alleges that defendants targeted for outsourcing the job responsibilities of older workers while making comments about their preference for younger workers. Although

3

defendants raise a number of legitimate arguments about the merits of this claim, these arguments are better suited for the summary judgment stage. <u>Iqbal</u> and <u>Twombly</u> did not reinstate a regime of code pleading. A complaint does not need "detailed factual allegations," just enough facts to raise it above the level of mere speculation. Under this standard, plaintiff's age discrimination claim must be allowed to proceed.

Plaintiff fairly alleges the following facts in his amended complaint.

ALLEGATIONS OF FACT

Plaintiff Robert Riley was employed by defendant U.S. Department of Agriculture for approximately 27 years, most recently as an information technology specialist with the National Forest Agency. Defendant Tom Vilsack is Secretary of the department. He is responsible for approving, implementing and enforcing department policies and procedures. Defendant Abigail Kimbell is Chief of the Forest Service.

Plaintiff is 60 years old and suffers from a sensory deficit condition caused by a spinal cord injury in 1994. Because of his condition, he cannot perform certain functions such as buttoning, cooking, typing and writing. He uses voice software to perform "work-related duties."

In January 2003 the department entered into a contract with IBM "for the purpose of outsourcing [plaintiff's] position." The department "targeted. . . older workers in

4

violation of well established policies and procedures without conducting an unbiased financial and civil rights impact analysis with respect to the impact that such outsourcing would have on older workers." The department stated in documents that its goal was to incorporate "younger highly qualified professionals [who] will have a modern professionally managed information infrastructure at their disposal." In describing the change, the department used "the metaphor of highly engineered cars that need very little service and minimal service centers to support versus older cars that are not as precise and need full service gas stations."

At the time of the outsourcing, 32 percent of the computer specialists were at least 50 years old, 38 percent of the telecommunications specialists were at least 50 years old and 27 percent of the computer assistants were at least 50 years old.

After plaintiff "began to oppose what he perceived [to be] discriminatory conduct," the department labeled him a "troublemaker."

As a result of the restructuring, plaintiff lost a significant percentage of his job duties. (Plaintiff does not say explicitly that he quit his job or was terminated, but the complaint suggests that he is no longer employed by defendants because he refers to his employment in the past tense and he requests reinstatement as a remedy.)

OPINION

## A.  Rule 8 Overview

The question before the court is whether plaintiff has stated a claim upon which relief may be granted with respect to his claims of age discrimination, disability discrimination and retaliation.  Answering this question requires a proper understanding of Fed. R. Civ. P. 8(a)(2), under which a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The parties agree that before Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), it was not difficult for a plaintiff in this circuit to satisfy the Rule 8 standard for a claim of discrimination or retaliation.  With respect to discrimination claims, it was enough for the plaintiff to identify the alleged discriminatory action and the characteristic that prompted the unequal treatment.  Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) (allegation of "I was turned down for a job because of my race" is sufficient to state a claim for race discrimination); Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Cir. 1996) (when plaintiff alleges that "discriminatory motives impelled discriminatory treatment of him, he has stated an equal protection claim").  The standard for retaliation claims was similarly lax. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (plaintiff satisfies Rule 8 for retaliation claim by identifying protected conduct and defendant's act of retaliation).

More generally, the Court of Appeals for the Seventh Circuit interpreted Rule 8 to

6

require plaintiffs to do no more than provide enough notice to allow the defendant to file an answer.  E.g., Christensen v. County of Boone, IL, 483 F.3d 454, 458 (7th Cir. 2007); Loubser v. Thacker, 440 F.3d 439, 443 (7th Cir. 2006); Brown v. Budz, 398 F.3d 904, 908 (7th Cir. 2005); Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002).  Plaintiffs did not need to plead facts for each element of a claim.  Thompson v. Walker, 288 F.3d 1005, 1007 (7th Cir. 2002).  A complaint could "not be dismissed on the ground that it is conclusory or fails to allege facts."  Higgs, 286 F.3d at 439.  The court emphasized the "no set of facts" language from Conley v. Gibson, 355 U.S. 41 (1957), stating that a plaintiff pleads himself out of court only "when it would be necessary to contradict the complaint in order to prevail on the merits." Kolupa v. Roselle Park District, 438 F.3d 713, 715 (7th Cir. 2006) (citing Conley, 355 U.S. 41).  See also Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006); DeWalt v. Carter, 224 F.3d 607, 610 n.1 (7th Cir. 2000).  In Vincent v. City Colleges of Chicago, 485 F.3d 919 (7th Cir. 2007), Judge Easterbrook provided an overview of the court's Rule 8 philosophy:

> [A] judicial order dismissing a complaint because the plaintiff did not plead facts has a short half-life. "Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b)." Kolupa v. Roselle Park District, 438 F.3d 713, 715 (7th Cir. 2006). Civil Rule 8 calls for a short and plain statement; the plaintiff pleads claims, not facts or legal theories. See Bartholet v. Reishauer A .G. (Zürich), 953 F.2d 1073, 1077-78 (7th Cir. 1992). Factual detail comes later—perhaps in response to a motion for a more definite statement, see Fed. R. Civ. P. 12(e), perhaps in response to a motion for

summary judgment. Until then, the possibility that facts to be adduced later, and consistent with the complaint, could prove the claim, is enough for the litigation to move forward. See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Hishon v. King & Spalding, 467 U.S. 69 (1984).

Facts that substantiate the claim ultimately must be put into evidence, but the rule "plaintiff needs to prove Fact Y" does not imply "plaintiff must allege Fact Y at the outset." That's the difference between fact pleading (which the courts of Illinois use) and claim pleading under Rule 8. See, e.g., Christensen v. Boone County, No. 04-4162 (7th Cir. Mar. 21, 2007), slip op. 18-19; Hefferman v. Bass, 467 F.3d 596, 599 (7th Cir. 2006); Simpson v. Nickel, 450 F.3d 303, 305-06 (7th Cir. 2006); AXA Corporate Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 277 (7th Cir. 2003); Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003).

Rule 8 was adopted in 1938, and Conley v. Gibson, 355 U.S. 41 (1957), stressed that it does not require fact pleading. It is disappointing to see a federal district judge dismiss a complaint for failure to adhere to a fact-pleading model that federal practice abrogated almost 70 years ago. As citations in the preceding paragraphs show, however, this is among many similar dispositions that the Supreme Court and this court have encountered recently and been obliged to reverse. . . . Dismissal under Rule 12(b)(6) is reserved for complaints that do not state legally cognizable claims, including the situation in which the plaintiff pleads himself out of court by making allegations sufficient to defeat the suit. But [the plaintiff] did not plead too much, to her own detriment, nor did she omit anything on the list in Rule 9(b).

"Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain ...' should stop and think: What rule of law requires a complaint to contain that allegation?" Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original).

Id. at 923.

A few weeks after the court of appeals expressed its frustration over the failure to

properly apply the <u>Conley</u> standard in <u>Vincent</u>, the Supreme Court decided to "retire" that standard in <u>Twombly</u>.  Quoting a case from this circuit that seemed to have been forgotten, the Court stated that the passage from <u>Conley</u> "has never been interpreted literally." <u>Twombly</u>, 550 U.S. at 561 (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101 (7th Cir. 1984)).  If it *were* taken literally, "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery," <u>id.</u>, an outcome the Court found unacceptable.  The Court concluded:  "<u>Conley</u>'s 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Id.</u>  at 562-63.

In place of the "no set of facts" standard, the Court held that Rule 8 requires plaintiffs to "state a claim to relief that is plausible on its face," <u>Twombly</u>, 550 U.S. at 570, and  that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 555.  The Court reasoned that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" success on the claim "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at 557.

9

The specific question in <u>Twombly</u> was whether it was enough for a plaintiff in an antitrust case to allege in conclusory fashion that the defendant made an illegal agreement. The Court said it was not.   "[W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." <u>Id.</u> at 556.

Although the dissenters viewed the majority opinion as a "dramatic departure from settled procedural law," <u>Twombly</u>, 550 U.S. at 573 (Stevens. J., dissenting), little changed in this circuit as a result of <u>Twombly</u>.  The court of appeals acknowledged that <u>Twombly</u> "retooled federal pleading standards," <u>Killingsworth v. HSBC Bank Nevada, N.A.</u>, 507 F.3d 614 (7th Cir. 2007), but in most cases the court declined to revisit previous holdings in light of the new case, adhering to the view that Rule 8 required nothing more than "fair notice."

For example, in <u>Airborne Beepers & Video, Inc. v. AT&T Mobility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007), the court interpreted <u>Twombly</u> "to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." <u>See also</u> <u>In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation</u>, 491 F.3d 638 (7th Cir. 2007) (interpreting  <u>Twombly</u> to mean only that "complaint must contain 'enough factual

10

matter (taken as true)' to provide the minimum notice of the plaintiffs' claim that the Court believes a defendant entitled to"). In another case, the court of appeals suggested that Twombly's reach was limited to "complex cases" or cases in which "discovery is likely to be more than usually costly." Limestone Development Corp. v. Village of Lemont, Illinois, 520 F.3d 797 (7th Cir. 2008).

When reading Twombly narrowly, the court of appeals usually cited Erickson v. Pardus, 551 U.S. 89 (2007), a per curiam decision issued just after Twombly. E.g., Doss v. Clearwater Title Co., 551 F.3d 634, 639 (7th Cir. 2008) ("The Supreme Court's decision in Erickson v. Pardus, 551 U.S. 89 (2007), put to rest any concern that Twombly signaled an end to notice pleading in the federal courts."). In Erickson, the Court reversed a decision dismissing a pro se prisoner's complaint in which he alleged that prison officials were refusing to treat his hepatitis C, in violation of the Eighth Amendment. In concluding that the lower courts had required the plaintiff to plead too much, the Court stated: "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 93. The Court omitted any reference to the "plausibility" standard discussed in Twombly.

The only case in which the court of appeals reflected on the effect of Twombly on its past decisions was EEOC v. Concentra Health Services, Inc., 496 F.3d 773 (7th Cir. 2007). In that case, the court conceded that decisions such as Kolupa in which the court had

11

followed <u>Conley</u> "are no longer valid" after <u>Twombly</u>. <u>Id.</u> at 779. However, even in <u>Concentra</u>, the court adhered to its view that a bare allegation of discrimination was sufficient to satisfy Rule 8. The court reasoned: "[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim." In other words, a bare allegation of race discrimination may be conclusory, but it is a *factual* conclusion that may be difficult to clarify in "a short and plain statement." The court made a similar point in <u>Burks v. Raemisch</u>, 555 F.3d 592, 594 (7th Cir. 2009), in which the court noted that Fed. R. Civ. P. 9(b) allows plaintiffs to plead matters such as intent "generally," which the court interpreted to mean "in a conclusory fashion."

The Supreme Court decided <u>Iqbal</u> two months after <u>Burks</u>. In <u>Iqbal</u>, the Court applied <u>Twombly</u> to a claim that the U.S. Attorney General and other high ranking officials directed the plaintiff's arrest and subjected him to harsh condition of confinement because of his race and religion. The Court analyzed the sufficiency of the complaint using a two-step process. First, the Court "identif[ied the allegations in the complaint that are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1951. Although the Court reiterated the statement from <u>Twombly</u> that Rule 8 does not require "detailed factual allegations," <u>id.</u> at 1949, the Court stated that a plaintiff may *not* allege discriminatory intent in conclusory fashion. "Rule 9 merely excuses a party from pleading discriminatory intent

12

under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." <u>Id.</u> at 1954. The Court did not identify what level of specificity is required, but concluded that it was not enough for the plaintiff to allege that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." <u>Id.</u> at 1951.

In the second step, the Court looked at the remaining allegations "to determine whether they plausibly suggested an entitlement to relief." <u>Id.</u> The Court rejected the plaintiff's argument that the "plausibility" standard announced in <u>Twombly</u> is limited to antitrust cases. Rather, the Court's interpretation of Rule 8 applied to "all civil actions," including discrimination claims. <u>Id.</u> at 1953. Applying the plausibility standard to the complaint, the Court concluded that the plaintiffs had failed to satisfy Rule 8: "[T]he complaint does not show, or even intimate, that [the defendants] purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." The Court did not discuss or even cite <u>Erickson</u>.

13

One of the tasks for federal courts now is to determine the implications that <u>Iqbal</u> has on the law within their own circuits.  In my view, <u>Iqbal</u> leaves little room for argument that the theory of Rule 8 articulated in <u>Vincent</u> and similar cases remains viable. More specifically, <u>Iqbal</u> and <u>Twombly</u> undermine three key premises in <u>Vincent</u>.  First, it can no longer be said that "a judicial order dismissing a complaint because the plaintiff did not plead facts has a short half-life," <u>Vincent</u>, 485 F.3d at 923, or that a complaint may "not be dismissed on the ground that it is conclusory." <u>Higgs</u>, 286 F.3d at 439.  The Court made it clear in <u>Iqbal</u> that plaintiffs *do* need to plead facts; conclusions are not enough.

Second, it can no longer be said that "the possibility that facts to be adduced later, and consistent with the complaint, could prove the claim, is enough for the litigation to move forward." <u>Vincent</u>, 485 F.3d at 923.  "Consistent with the complaint" is no longer the standard; plaintiffs must now show "plausibility."

Finally, <u>Iqbal</u> undermines the statement in <u>Vincent</u> that "the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.'" This is another way of stating that plaintiffs need not plead facts corresponding to each element of a claim. <u>Higgs</u>, 286 F.3d at 439.   Under <u>Iqbal</u>, plausibility means that allegations in a complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," <u>Iqbal</u>, 129 S. Ct. at 1949, which means that a plaintiff must include some allegations about each element, or at least allegations from which a court can draw

14

reasonable inferences about each of the elements. Twombly, 550 U.S. at 562 ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory") (quoting Car Carriers, 745 F.2d at 1106). In sum, Twombly and Iqbal establish two new principles of pleading in all cases: (1) "fair notice" alone will not suffice; a complaint must be "plausible" as well; and (2) a court may not accept "conclusory" allegations as true. Brooks v. Ross, 578 F.3d 574, 580-81 (7th Cir. 2009) (under Iqbal, complaints "must provide notice," cannot be "implausible" and cannot rely on "abstract recitations of the elements of a cause of action or conclusory legal statements").

The problem is that Iqbal and Twombly contain few guidelines to help the lower courts discern the difference between a "plausible" and an implausible claim and a "conclusion" from a "detailed fact." The descriptions of plausibility provided by the Court were short on specifics. E.g., Iqbal, 129 S. Ct. at 1949 (plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). Similarly, the Court did not describe what it meant by "conclusory statements" except to say that a complaint must provide "factual context," id. at 1954, or "factual enhancement," id. at 1949. In Twombly and Iqbal, the Court simply stated that the allegations were too conclusory; in Erickson, the Court simply stated that the allegations were *not* conclusory and criticized the court of appeals for finding the opposite. Lower courts

15

will have to resolve those questions on a case by case basis, but doing so will be no easy task. Id. at 1960-61 (Souter, J., dissenting) (stating that majority's understanding of "conclusory" allegations is inconsistent); Twombly, 550 U.S. at 590 (Stevens, J., dissenting) ("distinction [between 'facts' and 'conclusions'] is far easier to say than apply").

For its part, the Court of Appeals for the Seventh Circuit is proceeding cautiously. It continues to emphasize that Twombly and Iqbal have not changed the fundamentals of pleading. E.g., Bissessur v. Indiana University Bd. of Trustees, 08-3504, – F.3d – , 2009 WL 2902076 (7th Cir. Sept. 11, 2009) ("Our system operates on a notice pleading standard; Twombly and its progeny do not change this fact."); Brooks, 578 F.3d at 581 (after Iqbal, adhering to view that Erickson "put to rest" any "doubt that Twombly had repudiated the general notice-pleading regime of Rule 8").

The court of appeals has found support for its narrow reading of Iqbal in the Supreme Court's statement that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. For example, in Smith v. Duffey, 576 F.3d 336, 340 (7th Cir. 2009), despite the court's acknowledgment that Twombly "was extended" in Iqbal "to all cases," the court noted that Iqbal "is special in its own way" because it involved claims of official immunity, which raise unique concerns about the burdens of litigation on public officials. Smith, 576 F.3d at 340. This echos the view in

16

Limestone, 520 F.3d at 804, that Twombly "should not be overread" to require heightened pleading in run-of-the-mill cases.

The bottom line for the court of appeals seems to be that "the height of the pleading requirement is relative to circumstances." Cooney v. Rossiter, No. 08-3675, — F.3d — , 2009 WL 3103998, *3 (7th Cir. Sept. 30, 2009). Phrased more specifically, the plausibility standard has its most force when special concerns exist about the burden of litigation on the defendant or when the theory of the plaintiff seems particularly unlikely. E.g., id. ("[T]he plaintiff must meet a high standard of plausibility" when alleging "a vast, encompassing conspiracy"). However, in the ordinary case, the burden remains low. So long as the plaintiff avoids using legal or factual conclusions, any allegations that raise the complaint above sheer speculation are sufficient. This view is supported by Erickson, 551 U.S. 89, a case involving a run-of-the-mill prisoner claim of inadequate medical care in which the Court did not even discuss whether the claim was "plausible" and stated that the heightened pleading required by the court of appeals "depart[ed] in [a] stark . . . manner from the pleading standard mandated by the Federal Rules of Civil Procedure."

One final point. I do not read the requirement of "plausibility" in a complaint to mean that a court should assess the likelihood that a plaintiff will be able to prove a particular allegation. The Court rejected this view in both Twombly and Iqbal. Iqbal, 129 S. Ct. at 1951 ("To  be clear, we do not reject these bald allegations on the ground that they

17

are unrealistic or nonsensical."); Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.") District courts must still accept all *properly pleaded* facts as true, no matter how unlikely they may seem. A complaint is implausible under Iqbal and Twombly not because the allegations are "fanciful," Iqbal, 129 S. Ct. at 1951, but because they are too conclusory or because they fail to include facts about the elements of a claim. For example, a plaintiff in a race discrimination case could allege, "My boss at Big Corporation X fired me right after he told me that I am the best employee he ever had, but that he cannot overcome the animosity he feels toward me because of my race." Such an allegation may be *unlikely*, but it is not *implausible* under Iqbal or Twombly because it (1) is specific and (2) addresses the critical elements of the claim.

Thus, after Iqbal and Twombly, a court assessing the sufficiency of the complaint should ask: if all the *facts* the plaintiff alleges in his complaint are accepted as true, but all the conclusions are rejected, is it still plausible (that is, more than speculative) to believe that additional discovery will fill in whatever gaps are left in the complaint?

B. Age Discrimination

Applying these principles to plaintiff's complaint, I conclude that it contains the minimum facts necessary to state a claim upon which relief may be granted for disparate

18

treatment under the Age Discrimination in Employment Act. (I do not consider whether the complaint states a claim under a disparate impact theory because defendants did not raise this issue in their opening brief.  Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").) Under the ADEA, employment decisions by a federal agency "affecting employees . . . who are at least 40 years of age" must be "free from any discrimination based on age."  29 U.S.C. § 633a(a).  Defendants do not argue that a reduction in job responsibilities is not covered by the act or that plaintiff failed to identify sufficiently how his duties were reduced.  Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 612 (7th Cir. 2001) (examples of actions covered by federal discrimination laws include "significantly diminished material responsibilities").  Rather, the question is whether plaintiff pleaded enough facts to show at the pleading stage that defendants took this action "based on" his age.

Before Iqbal, it would have been sufficient for plaintiff to allege that "the Department of Agriculture significantly reduced my job responsibilities because I am over 40 years old." Bennett, 153 F.3d at 518.  After Iqbal, that is not enough.  As I noted in Kyle v. Holinka, No. 09-cv-90-slc,  2009 WL 1867671, *1 (W.D. Wis. June 29, 2009), "Iqbal . . . implicitly overturned decades of circuit precedent in which the court of appeals had allowed discrimination claims to be pleaded in a conclusory fashion."  Although the meaning of

"conclusory" may be ambiguous, the Court made it clear in Iqbal that it is not enough to identify the discriminatory act and the characteristic that prompted the discrimination.

At the same time, Iqbal requires courts to consider the context of a particular case. As the court of appeals recognized in Concentra, 496 F.3d at 782, when an element of a claim involves the intent of the defendant, the plaintiff is limited in the facts that he can provide at the pleading stage.  Of course, only the defendant knows why he took a particular action and generally the plaintiff will not have access to a significant amount of circumstantial evidence proving his claim without discovery.  Rule 8 should not be construed in such a way that it provides immunity to all but the most brazen violators of the law. Thus, in the ordinary discrimination case, the required "factual context" for the plaintiff's claim should be minimal.

Although plaintiff's complaint does not present the most compelling case of age discrimination, it provides more than just a conclusory allegation. Plaintiff alleges that defendants "targeted" for elimination positions that they knew were filled disproportionately by older workers, that they violated their own policies and procedures by doing so and that they made ambiguous statements that could be interpreted as showing a preference for younger workers.  This evidence would not likely be enough for plaintiff to prove his claim, but it is enough to "nudg[e his] clai[m] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Defendants do not identify any special circumstances in this

case that would require plaintiff to plead more than he has.

In arguing that plaintiff's age discrimination claim does not satisfy Rule 8, defendants make a number of legal errors.  First, defendants criticize plaintiff for "believ[ing] that notice pleading survives under Rule 8."  Dfts.' Br., dkt. #9, at 2.  The court of appeals made it clear in Bissessur, Brooks and other cases that notice pleading is alive and well in this circuit.

Second, defendants cite a number of summary judgment decisions to support their argument that plaintiff's allegations are insufficient.  E.g., Martino v. MCI Communications Services, Inc., 574 F.3d 447 (7th Cir. 2009).  Defendants say that it "makes sense" to cite summary judgment opinions because "Iqbal changed the rules," suggesting that the standard on a motion to dismiss is now similar to the standard on a motion for summary judgment. Dfts.' Br., dkt. #9, at 9. Again, that is exactly the type of argument that the court of appeals has been rejecting in its post-Twombly and post-Iqbal decisions.  To defeat a motion for summary judgment, a plaintiff must show that a reasonable jury could render a verdict in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If a plaintiff were required to allege facts satisfying that standard in his complaint, it would establish even more draconian pleading requirements than the code pleading regime rejected by the Federal Rules in 1938.  In Iqbal and Twombly, the Court did not find the complaints deficient because the plaintiffs had failed to allege facts that would prove their claims, but because the plaintiffs had failed to allege *any* facts regarding critical elements.  E.g., Twombly, 550 U.S.

21

at 561-62 ("[T]he complaint does not set forth a single fact in a context that suggests an agreement.")

Rather than the summary judgment standard, a more useful analogy would be Rule 11, which requires a plaintiff to conduct "an inquiry reasonable under the circumstances" before filing a complaint so as to determine whether any claims are supported in the law and whether any "factual contentions have evidentiary support or, if specifically so identified, *will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*." Fed. R. Civ. P. 11(b) (emphasis added).  If this standard is used as a guide, it would mean that a complaint should include enough facts to suggest that the plaintiff has reasonable grounds to believe that discovery will lead to evidence that the defendant may be held liable for a particular violation of the law; the plaintiff should not be required to show that he has enough evidence to win his case at the outset.  Twombly, 550 U.S. at 556 (complaint must have "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" liability).

Third, defendants argue about what they view as the "more likely explanation" for their behavior toward plaintiff.  Dft.'s Br., dkt. #6, at 10.  Although Twombly might suggest that this is an appropriate task for a court in reviewing a complaint, it misunderstands the court's responsibility in assessing a complaint for plausibility, which is simply to determine whether the complaint is "plausible *on its face*."  Twombly, 550 U.S. at 570 (emphasis

22

added).  In making that determination, a court may consider whether there are "obvious alternative explanation[s]," id. at 567, to the one alleged in the complaint, but the court is not to weigh the defendant's and plaintiff's stories to determine which one is "more plausible." Id. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").  That level of scrutiny is inappropriate even at the summary judgment stage. Lewis v. City of Chicago, 496 F.3d 645, 651 (7th Cir. 2007) ("The district court should not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue for trial.").

Fourth, defendants cite Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2009), which they say is part of "the trend in the United States Supreme Court of requiring more specificity in the pleadings with respect to allegations of discrimination." Dfts.' Br, dkt. #9, at 4.  This is wrong.  In Gross, Supreme Court interpreted the words "because of" in 29 U.S.C. § 623, the provision of the ADEA that applies to non-federal employers.  The Court concluded that the plaintiff must prove that age is the "but for" reason for an adverse employment decision, not just a "motivating factor," which is the standard for discrimination claims under Title VII.  42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B). Gross cannot be part of any "trend" relating to pleading standards when it had nothing to do with pleading, but rather the proper standard of *proof* under the ADEA.  The difference

23

between "motivating factor" and "but for" causation might be important at trial, but it does not matter in the complaint.  It is difficult to think of allegations that would be sufficient under Rule 8 to show that age was a "motivating factor" for a decision but insufficient to show that age was the "but for" reason.  This type of distinction could be relevant only under the most exacting of pleading standards.

Finally, defendants point out that plaintiffs failed to identify any similarly situated younger workers who were treated more favorably.  This is not dispositive because the ADEA does not require plaintiffs to make such a showing, even at summary judgment.  The question is not whether defendants "treated similarly situated younger workers more favorably" but whether defendants altered plaintiff's conditions of employment "based on" his age.  "Showing better treatment of similarly situated persons outside your group is one way that a plaintiff can show discriminatory intent, but it is not the only way."  Williams v. Doyle, 494 F. Supp. 2d 1019, 1027 (W.D. Wis. 2007); see also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002) (court erred in requiring plaintiff to plead facts in accordance with particular evidentiary standard under ADEA and Title VII).

## C.  Disability Discrimination

Under the Congressional Accountability Act of 1995, 2 U.S.C. § 1311, "[a]ll personnel actions" of federal agencies must be "free from discrimination based on . . .

disability."   The act incorporates the meaning of "disability" as it is used in the Rehabilitation Act and the Americans with Disabilities Act. 2 U.S.C. § 1311(a)(3).  See also 29 U.S.C. §§ 791(b) and (g) (prohibiting federal agencies from engaging in disability discrimination under Rehabilitation Act).  Under the federal disability laws, discrimination includes an employer's failure to provide a reasonable accommodation for the disability of a qualified individual.  Bellino v. Peters, 530 F.3d 543, 548 (7th Cir. 2008).  The Court of Appeals for the Seventh Circuit has distilled such a claim to four elements:  (1) the plaintiff is disabled; (2) he is otherwise qualified for the job; (3) the defendant is aware of disability and (4) the defendant failed to provide reasonable accommodation to plaintiff.  King v. City of Madison, 550 F.3d 598, 600 (7th Cir. 1998).

Even if I assume that plaintiff alleged enough facts to show that he is disabled, he failed to allege any facts showing that defendants discriminated against him because of that disability.  The only allegation in his complaint regarding that issue is that defendants "failed to accommodate plaintiff's disability with the intention to force him into early retirement."  Am. Cpt. ¶ 9f, dkt. #4.  This is simply a conclusion, which I may not accept as true under Iqbal.  Even without regard to Iqbal, the allegation does not provide notice of plaintiff's claim to defendants.  He does not identify the accommodation he needed or provide any factual context for defendants' alleged failure to accommodate him.  He does not even allege that defendants were aware of his disability.

25

In his response brief, plaintiff asks the court to consider as part of his complaint the summary of his allegations provided by the EEOC in its final decision, which plaintiff attached to the complaint.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")  He points to the following discussion in that decision:

> The Complainant stated that the official functions of his job included 60 percent desk side support. He stated that he actually perform[ed] user support task 80 percent of the time. He stated that since the contract with IBM was implemented to outsource the Help Desk, he mainly worked on hardware, networking, physically setting up personal computers and changing internal parts on the computer. (ROI Exhibit F1)
>
> * * *
>
> The Complainant claimed that despite the lack of change in his job description, the majority of his time is spent on documenting other nonuser support tasks, which are more difficult for him to perform due to his disability. He stated that the greatest percentage of his job was given away. He stated that the effect on him seemed to be more extreme because he cannot go out and do something else because he does not function like a normal person. He cannot sign his name or type. He stated that his depression worsened after his duties were taken away.

This discussion provides the additional allegation that plaintiff's job responsibilities involved "tasks [that] are more difficult for him to perform because of his disability." However, these allegations still fail to identify what reasonable accommodation defendants

26

should have provided plaintiff and how they failed in their obligation to provide one.  Mays v. Principi, 301 F.3d 866, 871 (7th Cir. 2002) ("[T]he burden of showing that a reasonable accommodation existed remains on the employee.").  Further, he does not say that he ever complained to defendants about the need for accommodations or that they knew about that need from some other source.  Although plaintiff does not have to provide details establishing each element of his claim, he must at least explain what defendants did wrong.

In his brief, plaintiff says that defendants "failed to accommodate his disability when they outsourced the parts of his job that he was more easily able to do,"  Plt.'s Br., dkt. #7, at 10, but the only authority he cites in support of this theory is a discussion in Tart v. Illinois Power Co., 366 F.3d 461, 475 (7th Cir. 2004), about what constitutes an adverse employment action.  That is a different issue.  Changing parts of someone's job may be adverse, but that does not mean that the change itself is a failure to provide a reasonable accommodation.  Such a failure could occur if defendants refused to appropriately assist plaintiff after the changes, but he does not make that allegation.  The Rehabilitation Act does not prohibit employers from outsourcing job responsibilities because of an incidental effect it might have on a disabled employee.  Filar v. Board of Education of City of Chicago, 526 F.3d 1054, 1067-68 (7th Cir. 2008) (federal disability laws do not require employees to give preferential treatment to disabled employees).  If plaintiff believed that he could not perform his new responsibilities, he could have requested reassignment to a vacant position,

EEOC v. Humiston-Keeling, Inc., 227 F.3d 1024, 1026 (7th Cir. 2000), but he does not suggest that he asked for a reassignment or that one was available.  Accordingly, plaintiff's complaint must be dismissed as to his claim for disability discrimination.


D.  Retaliation

Both the Rehabilitation Act and the ADEA prohibit federal employers from retaliating against employees for engaging in conduct protected by the statutes, such as testifying in a discrimination case or filing a charge with the EEOC.  Gomez-Perez v. Potter, 128 S. Ct. 1931 (2008); Burks v. Wisconsin Department of Transportation, 464 F.3d 744, 758 (7th Cir. 2006).  Plaintiff includes one sentence in his complaint about retaliation:  "when he and other workers began to oppose what he perceived [to be] discriminatory conduct on the part of defendant's actions, the defendant began a campaign of retaliation which included, but was not limited to label[ing] him and others as 'trouble makers' for opposing the outsourcing plan."  Am. Cpt. ¶9e, dkt. #4.  In his brief, plaintiff cites an additional passage from the EEOC decision repeating an allegation from plaintiff that defendants discussed plaintiff's "complaint" and possibly called him and others "trouble makers" during a conference call. Plt.'s Br., dkt. # 7, at 11.

It is not completely clear from plaintiff's amended complaint or the cited passage

28

from the EEOC decision what plaintiff believes his protected conduct is.  If the "complaint" mentioned in the EEOC decision is his charge with the EEOC, that would be protected by the statutes.  However, even if I assume that defendants called plaintiff a "trouble maker" because he filed a charge with the EEOC, plaintiff's complaint must be dismissed as to his retaliation claim.

A plaintiff cannot state a claim for retaliation under any of the federal discrimination statutes unless he identifies a "materially adverse" action taken by his employers because of his protected conduct.  Burlington Northern & Santa Fe Railway  v. White, 548 U.S. 53 (2006).  Mere speech of an employer cannot rise to this level unless it is so severe or pervasive as to alter the conditions of the plaintiff's employment.  Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004).  Calling plaintiff a "trouble maker" in one instance is not enough to meet that standard.  Crews v. City of Mt. Vernon,  567 F.3d 860, 869-70 (7th Cir. 2009) (isolated "disparaging comments . . .  are not severe enough to be actionable retaliation").

The "trouble maker" comment is the only alleged retaliation plaintiff identifies.  In the past, perhaps plaintiff could have been saved by his allegation that the retaliation "included, but was not limited to" that comment, leaving open the possibility that more serious actions occurred.  E.g., Lekas v. Briley, 405 F.3d 602, 612 (7th Cir. 2005) (court could not assume that plaintiff did not suffer from deprivation of liberty under due process clause because "the complaint's catalogue of deprivations is non-exhaustive . .  listing

29

hardships 'including, but not limited to,' those set forth therein"); American Nurses' Association v. Illinois, 783 F.2d 716, 725 (7th Cir. 1986) (finding that, where particular discriminatory practices listed by a complaint in support of a sex discrimination action are "merely illustrative ('not limited to'), the complaint would not fail even if none of [the listed discriminatory practices] were actionable"). Cf. Kolupa, 438 F.3d at 715 ("Silence is just silence and does not justify dismissal unless Rule 9(b) requires details. Arguments that rest on negative implications from silence are poorly disguised demands for fact pleading.")

In the age of Iqbal and Twombly, the permissive view of pleading in Lekas, American Nurses and Kolupa is no longer valid. (The court of appeals has questioned the validity of Kolupa on similar grounds in Concentra, 496 F.3d at 777.) "Silence" may be "consistent with" success on the merits, but it cannot be used toward showing that a claim is "plausible on its face." Twombly, 550 U.S. at 570. Accordingly, plaintiff's complaint must be dismissed as to his retaliation claim.


ORDER

IT IS ORDERED that the motion to dismiss filed by defendants Tom Vilsack, Abigail Kimbell and the U.S. Department of Agriculture, dkt. #5, is DENIED with respect to plaintiff Robert Riley's claim for age discrimination. The motion is GRANTED with respect to plaintiff's claims for retaliation and disability discrimination. The amended complaint

is DISMISSED as to those claims.

Entered this 21st day of October, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge